THOMAS H. DECATUR, petitioner-respondent,

*v.*

ELIZABETH H. YOUNG, defendant-appellant.

[Submitted March 21st, 1921.  Decided June 20th, 1921.]

1. Chapter 178 of laws of 1909 (*P. L. p. 270*), permitting an appeal to this court by persons adjudged by the court of chancery to be in contempt for acts done or omitted elsewhere than in the presence of the court, does not conflict with any provision of the constitution of New Jersey relating to the jurisdiction of the court of chancery, and is not an unconstitutional exercise of power of the legislature.

2. Where children, under seven years of age, whose parents had separated, had been left by their father, without his support, in the actual care and custody of their mother, in the household of their grandparents, in this state, and the mother took them with the family to New York, when the grandfather, for business reasons removed there, where they remained in the care and custody of their mother, but at the expense of the grandfather—*Held*, in a *habeas corpus* proceeding taken by the father (in which the grandmother alone was served with the writ while temporarily in this state), that the mere fact that the grandmother acquiesced in the mother and children accompanying the family, did not operate to transfer the custody or control of the children to the grandmother, nor vest her with power to remove the children from New York and produce them in court in New Jersey, against the will of their mother, and that her failure to do so, or to take any action to that end, is not contempt of court.

On appeal from an order of the court of chancery advised by Vice-Chancellor Buchanan.

*Messrs. Katzenbach & Hunt,* for the appellant.

*Mr. Harry Heher,* for the respondent.

The opinion of the court was delivered by

TRENCHARD, J.

This is an appeal from an order of the court of chancery adjudging Elizabeth H. Young guilty of contempt of court and imposing a fine upon her.

The facts and circumstances giving rise to the order are as follows:

Thomas H. Decatur was married in 1912 to Elsie Kathleen Young, the daughter of the appellant, Elizabeth H. Young, and James A. Young, her husband. Two children were born of this marriage, Jay F. and Kathleen, who are respectively six and four years of age. Decatur and his wife and children lived with Mr. and Mrs. Young, in Trenton, until about June of 1920, when Mr. Young, the husband of the appellant and head of the family, required him to leave the house. Thereafter, Mrs. Decatur and her two children continued to live with Mr. and Mrs. Young, in Trenton, until about the end of September, 1920, when Mr. Young, for business reasons, removed from Trenton to Fredonia, New York, taking his wife, and Mrs. Decatur and her two children went with him. Mr. Decatur was not informed of the removal. He had at first contributed $3.50 per week to the expenses of the joint household while they were all living together, and afterwards $7 per week; but he made no contribution after he was expelled from the household in June, 1920.

On October 21st, 1920, on his petition, a writ of *habeas corpus* was issued by the chancellor addressed to James A. Young, Elizabeth H. Young, his wife, and Elsie Kathleen Decatur, commanding the production of the two children above named before the chancellor. This writ was served on the appellant, Elizabeth H. Young, on October 22d, 1920, in Trenton, she having returned from Fredonia for the purpose of packing some furniture for shipment. The writ was not served upon James A. Young or Mrs. Decatur, who remained in Fredonia, New York, with the children.

Mrs. Young made a return to the writ, and on October 26th submitted herself for examination respecting her return. At the conclusion of such examination an order was made requiring her to show cause why an attachment for contempt should not issue against her, and upon the return day thereof, after hearing, the order appealed from adjudging her in contempt was advised by the vice-chancellor.

At the outset it is necessary to dispose of the contention of the respondent that the appeal should be dismissed because chapter 178 of laws of 1909 (*P. L. p. 270*), under which the appeal is taken, is unconstitutional, in that it takes away from the court of chancery one of its constitutional prerogatives. But that is not so. The act in question, permitting an appeal to this court by persons adjudged by the court of chancery to be in contempt for acts done or omitted elsewhere than in the presence of the court, does not conflict with any provision of the constitution of the state relating to the jurisdiction of the court of chancery, and is not an unconstitutional exercise of power by the legislature. *Bijur Motor Appliance Co.* v. *International Association of Machinists, 92 N. J. Eq. 644.*

We come now to a consideration of the point made by the appellant that a sufficient and legal reason appeared for her non-production of the bodies of the children in response to the writ of *habeas corpus.*

Upon careful consideration we are of the opinion that the point is well taken.

Sections 14 and 15 of the *Habeas Corpus* act (*Comp. Stat. p. 2642*) required Mrs. Young to make a return to the writ. She complied with such requirement. Her verified return set forth that she "has not, and never has had, the said Jay F. Decatur and Kathleen Decatur, nor either of them, in her custody or under her power or restraint."

Of course, if true, that return was sufficient and legal reason for her failure to produce the children.

But upon the return coming in the vice-chancellor deemed it advisable to examine Mrs. Young under oath as authorized by section 16 of the act, and upon such examination, and further hearing on the rule to show cause, he considered that "after due service upon her of the writ of *habeas corpus,*" she "wholly failed to make any efforts to comply with said writ," and adjudged her in contempt.

It will be seen that it was not considered that Mrs. Young, the grandmother, had or ever had the custody of the children, or either of them, either actually or in any technical legal sense.

Obviously, she had not. The children had been left by their father in the actual custody of their mother, their natural custodian under the circumstances, where they remained, with their mother, as a part of the household of the grandparents, and at the expense of the grandfather, until they went to New York with the family when the grandfather saw fit to remove there for business reasons. The children cannot be said to be in the custody of the grandmother or under her power or restraint merely because she acquiesced in their accompanying the family to New York, especially since it appears that the grandmother did not influence her daughter in that course, contributed nothing to that end, and that the mother had and has the actual care and charge of the children in New York where they are supported exclusively by the grandfather.

The learned vice-chancellor recognized that the grandmother had not the "actual legal custody or control of the children," but considered that she had "sufficient control to have made it necessary for her    *    *    *    to do what she could in the exercise of that control to see that the children were produced here," and that, he concluded, she did not do.

After much consideration of the testimony and reflection we are unable to take that view.

No doubt, if the children were within the control of the grandmother and subject to her direction, she was bound to exercise such power of control and produce them in court. But, as we have seen, they were in the custody and under the care and control of their mother in New York. We have pointed out that the mere fact that the mother of the children left this state with her parents, taking her children with her, did not operate to transfer the custody or control of the children to the grandmother, and in our opinion she had no more power to produce these children or to remove them from the State of New York against the will of their mother than any stranger had.

That this is so will be demonstrated by the inquiry, What was the grandmother to do?

The court below suggested that she should have "endeavored to persuade the mother to bring the children into court," and that she should have "probably gone so far as to have made it un-

comfortable for her own husband" if he had refused to exercise coercion upon the mother of the children to that end. But, certainly, under the circumstances, the grandmother was not required to do either of these things. The mother and the grandfather were residing in New York, and had not been served with the writ and were not in court. They were entitled to stand upon their rights under the law of New York.

Moreover, at the hearing on the rule to show cause, it satisfactorily appeared that even if the grandmother had attempted to persuade the mother and grandfather of the children to produce them in court, as she did attempt to do after the return of the writ and before the hearing on the rule, such effort would have been fruitless.

The order of the court below will be reversed, with costs.

*For affirmance*—None.

*For reversal*—THE CHIEF-JUSTICE, SWAYZE, TRENCHARD, PARKER, BERGEN, MINTURN, KALISCH, BLACK, KATZENBACH, WHITE, HEPPENHEIMER, WILLIAMS, GARDNER—13.